## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 41067

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2014 Unpublished Opinion No. 815 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: November 14, 2014 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| DANIEL ROBERT FRANKS, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Ronald J. Wilper, District Judge.

Judgment of conviction for aggravated battery, affirmed.

Sara B. Thomas, State Appellate Public Defender; Spencer J. Hahn, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Chief Judge

Daniel Robert Franks appeals from his judgment of conviction entered following a jury verdict finding him guilty of aggravated battery. He contends his constitutional right to compulsory process was violated by the district court's refusal to order a witness to testify under threat of contempt and by its denial of his request that the witness be required to appear before the jury to express any refusal to answer questions. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

Franks' neighbor, Robert Knox, complained to law enforcement and animal control authorities that Franks' dogs were digging holes under the neighbors' shared fence. The next day, Franks and his nephew, Justin Peterson, went to Knox's house. Knox testified that when he opened the door, Franks said, "You'll never f---ing call the cops again," and then "sucker punched" Knox in the face and pulled him outside. Knox did not have a clear memory of what

1

happened next, but when law enforcement responded to his 911 call, it was evident he had been severely beaten.

Franks was charged with aggravated battery, Idaho Code §§ 18-903, -907(1)(a) and -204, under the alternative theories that he personally battered Knox or that he aided and abetted another in doing so. Franks testified at trial that he had nothing to do with the attack. During his case-in-chief, Franks advised the district court that he intended to call Peterson, who was imprisoned on another charge, as a witness and that he intended to point to Peterson as the sole perpetrator of the attack. Once Peterson was in the courtroom, the district court asked whether he was willing to testify in the case. Peterson indicated he would not, stating that he was not worried about incriminating himself, but was concerned with being "labeled a rat" and suffering attendant repercussions in prison.

Franks asked the district court to order Peterson to testify and/or to require Peterson to take the stand and indicate, in front of the jury, his refusal to testify. The district court declined, determining it "would be a waste of time and confusing to the jury." Instead, the court indicated it would advise the jury that Peterson refused to testify and they were allowed to "make whatever inferences they want to draw from that." The district court indicated it did not threaten Peterson with contempt sanctions because it believed it would "just be a waste of time."

The district court advised the jury that although they had heard the name Justin Peterson during the course of the trial and Peterson was called as a witness, he had indicated he would refuse to testify and was excused. Franks then called his next witness who, because Peterson was declared "unavailable," was allowed to testify that Peterson told him on the night of Knox's attack that Peterson had been involved in a fight in Boise. During closing argument, Franks argued that Peterson refused to testify because he was the one who "beat Robert Knox." The State argued that Peterson "might have a lot of reasons" for not testifying, including a fear of retaliation.

The jury found Franks guilty of aggravated battery. The district court entered a judgment of conviction and imposed a unified sentence of fifteen years, with five years determinate. Franks now appeals.

## II.

## ANALYSIS

Franks contends his Sixth Amendment rights to compulsory process and to present a defense were violated by the district court's refusal to order Peterson to testify under the threat of contempt and by the court's denial of Franks' request that Peterson be required to appear before the jury and express his refusal to answer any questions. The Sixth Amendment of the United States Constitution guarantees a criminal defendant the right "to have compulsory process for obtaining witnesses in his favor." *Accord* IDAHO CONST. art. I, § 13. Compulsory process is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *State v. Dalrymple*, 144 Idaho 628, 634-35, 167 P.3d 765, 771-72 (2007). The right of the accused to present witnesses in his own defense is fundamental but is not without limitation. *Taylor v. Illinois*, 484 U.S. 400, 408-10 (1988); *Dalrymple*, 144 Idaho at 635, 167 P.3d at 772. A mere deprivation of testimony does not establish a Sixth Amendment violation. *United States v. Valenzuela–Bernal*, 458 U.S. 858, 867 (1982); *Dalrymple*, 144 Idaho at 635, 167 P.3d at 772. Compulsory process only applies if the defendant can at least make some plausible showing of how the witnesses' testimony would have been both material and favorable to his defense. *Valenzuela–Bernal*, 458 U.S. at 867; *Dalrymple*, 144 Idaho at 635, 167 P.3d at 772. Materiality and favorableness are judged in the context of the whole record. *Valenzuela–Bernal*, 458 U.S. at 868; *Dalrymple*, 144 Idaho at 635, 167 P.3d at 772. In constitutional terms, evidence is material if it would create a reasonable doubt in the minds of the jurors that did not otherwise exist. *State v. Garza*, 109 Idaho 40, 43, 704 P.2d 944, 947 (Ct. App. 1985).

In light of the entire record, Franks has not shown that Peterson's testimony would have been both material and favorable to his defense. Most obviously, Peterson had expressed his refusal to testify and thus, he would not have produced any testimony, let alone testimony that was material and favorable to Franks. *State v. Acker*, 327 P.3d 931, 961 (Haw. 2014) ("[T]he record is clear that [the witness] would not have produced 'relevant and material testimony befitting the defense' because he refused to testify."). In addition, the record indicates that even if Peterson had testified, the testimony would not have been favorable to Franks. When law enforcement was interviewing Franks about the attack, they told him they had interviewed

3

Peterson and Peterson said that Franks was the perpetrator. During the parties' questioning of Peterson at trial, outside the presence of the jury, the prosecutor asked Peterson what his answer would be if he was asked "if your version of the events has changed" and Peterson replied, "No." In addition, Peterson repeatedly indicated his reasoning for refusing to testify was not because he feared incrimination, but because he feared being labeled a rat--reasoning which indicated his testimony would implicate Franks and not himself.

On appeal, Franks points to no evidence to the contrary. In fact, as the State points out, the record shows that Franks actually benefitted from Peterson's refusal to testify. After the district court informed the jury of Peterson's refusal to testify, Franks was permitted to argue that Peterson refused to testify because Peterson was the perpetrator. In addition, because Peterson did not testify, the district court declared him "unavailable" for the purposes of the hearsay rule and permitted Franks to elicit testimony from another witness that Peterson had made statements implicating himself in the crime.

Because Franks did not make a plausible showing that Peterson's testimony would have been both material and favorable to his defense, he has not established compulsory process is implicated in this circumstance. Thus, it follows that he cannot show that any alleged action (or inaction) by the district court in contributing to Peterson's failure to testify constituted a Sixth Amendment violation. Franks' judgment of conviction for aggravated battery is affirmed.

Judge LANSING and Judge MELANSON, **CONCUR**.

4